[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
This is an accelerated calendar appeal. Appellant, William J. Smith, appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, which dismissed his various motions and petitions requesting custody of his sons and step-son for want of jurisdiction. Appellee, Rita J. Rhodes, has not filed an answer brief. For the reasons that follow, we reverse the judgment of the juvenile court and remand the matter for further proceedings consistent with this opinion.
On January 21, 1998, appellant filed a motion for emergency temporary custody and a petition for the allocation of parental rights and responsibilities for the following three minor children: Billy Joe Smith, d.o.b. May 10, 1990; Aaron Don Smith, d.o.b. June 20, 1991; and Joseph L. Rhodes, d.o.b. April 14, 1988. In the motion, appellant sought an order designating him the residential parent and legal custodian of the three boys. Appellant is a resident of Dorset, Ohio.
In an affidavit attached to the motion for emergency temporary custody, appellant averred that he was the natural father of Billy Joe and Aaron Don Smith and the step-father of Joseph L. Rhodes. He further averred that the natural mother and legal custodian of the three boys, appellee Rita J. Rhodes, contacted him in December 1997 and asked him to assume custody of the children because she was not in a position to take care of them. Specifically, appellant attached to his affidavit a letter that appellee gave him. The handwritten letter reads as follows:
 "I Rita J. Rhodes give my permission for Bill Smith and Betty Smith to take Bill J. Aaron D. and Joey to Ohio.
 "This note will clear them to provide for these boys as I at this time cannot as my nerves are shot and I need time to clear my head as I am afraid I will hurt my sons and regret it[.] [Signed] Rita J. Rhodes 12-29-97[.]"
Appellee and the children had been living in Rockingham, North Carolina for the year prior to the date of the letter. Appellant thereafter drove to North Carolina on December 29, 1997 and brought the children back with him to his home in Dorset, Ohio.
Appellant also filed a child custody affidavit pursuant to R.C.3109.27 in which he averred that he had no knowledge of any pending custody claims or litigation in relation to the three children and that he was never convicted of any offense involving child abuse or neglect. He further indicated that from January 1993 to August 1996, the children lived with appellee in West Virginia. From August 1996 to November 23, 1996, the children lived with both appellant and appellee in Jefferson, Ohio. Thereafter, the children resided with appellee in North Carolina until appellant came to collect the children on December 29, 1997.
In support of appellant's petition for the allocation of parental rights and responsibilities, appellant averred that appellee was incapable of achieving the custody change due to her unstable mental condition evidenced by the letter. He further revealed that he did not know the name and/or address of the biological father of Joseph L. Rhodes, and that appellant and appellee were never married.
Appellant asserts in his appellate brief that on January 30, 1998, the juvenile court awarded him temporary placement of Billy Joe Smith based on jurisdiction it had previously assumed in a paternity action involving the child. However, the record before this court does not contain the judgment entry of January 30, 1998.
Appellant then filed a motion to determine jurisdiction in the case for the remaining two children on February 10, 1998. In the motion, appellant asserted that appellee consented to the juvenile court's jurisdiction in the matter and further consented to an order awarding appellant custody of the three children. Appellant attached an affidavit from appellee which averred the same. Appellee also averred that no other court had exercised jurisdiction over the children.
Nevertheless, the juvenile court dismissed the case as it pertained to Aaron Don Smith and Joseph L. Rhodes on February 13, 1998.
The judgment entry read:
 "After reviewing the record, the Court finds that because the custodian of the above captioned children is not a resident of Ashtabula County that Ashtabula County Juvenile Court does not have jurisdiction to make orders regarding the above captioned juveniles. The above captioned case is dismissed."
As it is clear that the February 13, 1998 judgment entry did not include Billy Joe Smith in its caption, we will presume for the purposes of this opinion that the juvenile court did retain jurisdiction over the case as it pertained to him.
Appellant perfected a timely appeal, asserting one assignment of error:
 "THE TRIAL COURT ERRED IN FAILING TO ASSUME JURISDICTION GRANTING JUDGMENT WHERE THE PARTIES ARE IN AGREEMENT, NO OTHER COURT HAS ASSUMED JURISDICTION AND THE MINOR CHILDREN ARE IN OHIO AND IT IS THE INTENTION OF THE PARTIES THAT THEY REMAIN SO."
In his sole assignment of error, appellant alleges that the juvenile court erred and abused its discretion when it refused to assume jurisdiction over the two children. We agree.
Initially, we note that it is within the juvenile court's discretion under the provisions of the Uniform Child Custody Jurisdiction Act ("UCCJA"), adopted in Ohio as R.C. 3109.21 etseq., to assume jurisdiction in a case involving an interstate change of custody proceeding. In re McClelland (Sept. 29, 1995), Lake App. No. 94-L-153, unreported, at 5, 1995 Ohio App. LEXIS 4366, citing State ex rel. Aycock v. Mowrey (1989), 45 Ohio St.3d 347. See, also, In re Wonderly (1981), 67 Ohio St.2d 178, 187. Accordingly, a reviewing court cannot reverse a lower court's decision regarding jurisdiction absent an abuse of discretion. Inre McClelland at 5. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
However, the juvenile court's discretion in this regard is guided and limited by the statutory factors contained within R.C.3109.22 and 3109.25, among others. These two provisions set forth a two-prong analysis which governs a juvenile court's determination of whether to exercise jurisdiction in a given case.In re Skrha (1994), 98 Ohio App.3d 487, 496; see, also, In reWonderly.
The first prong of the analysis is set forth in R.C.3109.22(A). Under this statutory provision, a juvenile court in Ohio that has jurisdiction to make a parenting determination shall exercise that jurisdiction only if one of the conditions specified in subsections (1) through (4) of the statute is met. Justis v.Justis (1998), 81 Ohio St.3d 312, 315. Regarding the second prong of the analysis, once a court determines that it has jurisdiction pursuant to R.C. 3109.22(A), it may nevertheless decline to exercise jurisdiction pursuant to R.C. 3109.25 if the court finds that "it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum." R.C. 3109.25(A).
Here, it is difficult to ascertain from the juvenile court's judgement entry exactly why it dismissed the case for lack of jurisdiction as to two children. The only reason given for the dismissal was the fact that appellee, the children's mother, lived in a different state.
Nevertheless, it is apparent that the juvenile court acted unreasonably in the case at bar because it failed to consider the statutory provisions of R.C. 3109.22 which govern the initial determination of jurisdiction. Moreover, there was no question that the juvenile court was authorized to exercise jurisdiction over the subject children by virtue of R.C. 3109.22(A)(3). This provision authorizes the juvenile court to exercise jurisdiction when "[t]he child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent[.]"
In the case at bar, the children were in Ohio with appellee's consent, and appellant submitted as one of his exhibits a letter drafted by appellee in which she stated that she was afraid that she might "hurt [her] sons and regret it." Although appellee did not reiterate the same in her affidavit, she nevertheless confirmed that she consented to appellant being named the legal custodian of the children. The letter combined with appellee's affidavit established that an emergency situation was present and that it was necessary to protect the children from possible mistreatment or abuse by appellee, given her current mental state.
Regarding the second prong of the analysis, a court with jurisdiction under the UCCJA may nevertheless decline to exercise jurisdiction if it finds that Ohio is not a convenient forum for making the parenting determination. Here the juvenile court made no such finding. Nor is there any indication that the juvenile court complied with the requirements of R.C. 3109.25(H) when it dismissed the case. This provision states:
 "Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the clerk of the court for forwarding to the appropriate court."
Thus, pursuant to R.C. 3109.25(H), a juvenile court is not permitted to leave a case unresolved once it declines to exercise jurisdiction on the grounds of Ohio being an inconvenient forum. This, however, is what happened here.
As a result, we are reluctant to assume that the juvenile court intended to decline jurisdiction on this basis, despite the given explanation that appellee lived in another state. Thus, as the juvenile court did not decline jurisdiction pursuant to R.C.3109.25, it was an abuse of discretion to dismiss the case for lack of jurisdiction when it clearly had such jurisdiction pursuant to R.C. 3109.22(A)(3).
In light of the foregoing analysis, appellant's sole assignment of error is well-taken. The judgment of the juvenile court is reversed and the case remanded for further proceedings consistent with this opinion. ___________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J.,
O'NEILL, J., concur.